UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:17-cv-97-RJC
(3:12-cr-370-RJC-DSC-2)

| | |
|---|---|
| JASON DEAN BROWN, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| ) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1).

I.     BACKGROUND

Pro se Petitioner Jason Dean Brown, a United States citizen, owned illegal sweepstakes call centers in Costa Rica and also worked as both an "opener" and "loader." (Crim. Case No. 3:12-cr-370-RJC-DSC-2, Doc. No. 56 at ¶ 6: PSR). An "opener" is the telemarketer who initially contacts and persuades the victim to send money in payment for fraudulently alleged fees. (Id. at ¶ 7). A "loader" is the telemarketer who takes over contact with a paying victim and persuades the victim to pay additional, purported fees before receiving the promised reward—in Petitioner's case, a sweepstakes prize of at least $350,000. (Id. at ¶¶ 7-8).

Beginning in 2007, Petitioner and his co-conspirators opened a call center in San Jose, Costa Rica, to defraud United States residents through a fraudulent sweepstakes telemarketing scheme. Using various aliases, Petitioner and his co-conspirators would call their victims and inform them that they had won a sweepstakes, but delivery of the sweepstakes prize was

1

contingent on the victims paying a "refundable insurance fee." (Id.). The sweepstakes was fraudulent, as no prize existed, and all victim funds went directly to the personal benefit of Petitioner and his co-conspirators. (Id.). During the scheme, Petitioner and his co-conspirators would impersonate members of various federal government agencies, including the Federal Trade Commission and U.S. Customs, in order to persuade the victims to pay the additional fictitious fees. See (Id. at ¶ 10).

On November 15, 2012, a grand jury indicted Petitioner and a co-conspirator on fourteen counts. (Id., Doc. No. 7: Indictment). Petitioner entered into a plea agreement with the Government on July 30, 2014, pleading guilty to (1) conspiracy to commit wire and mail fraud (18 U.S.C. §§ 1349, 2326(2)(A) & (B)) (Count One); (2) wire fraud (18 U.S.C. §§ 1343, 2326(2)(A) & (B)) (Count Two); (3) and conspiracy to commit money laundering (18 U.S.C. § 1956(h) (Count Ten)). See (Id., Doc. No. 33: Plea Agreement; Doc. No. 70: Judgment). As part of his plea agreement, Petitioner stipulated that there was a factual basis for his plea and that he had read and understood the factual basis and that it could be used to determine the applicable sentence. (Id., Doc. No. 33 at ¶ 1). Petitioner agreed to waive his right to challenge his conviction and sentence on appeal or in any post-conviction proceeding, except as to claims of ineffective assistance of counsel or prosecutorial misconduct. (Id. at ¶ 18).

At the plea hearing, Petitioner testified that he understood the nature of the charges and the potential penalties, as well as the fact that the Court could not yet determine his sentence and that he would still be bound by his plea even if he received a higher sentence than he expected. (Id., Doc. No. 58 at 8-9: Plea Tr.)). Petitioner testified that he was guilty of the charges. (Id. at 11). The Government summarized the plea agreement, including the provision that there were no other agreements, representations, or understandings between the parties. (Id. at 11-13).

Petitioner agreed that he had reviewed the plea agreement with his attorney and that he understood and agreed to its terms, including the fact that he had waived the right to challenge his conviction and sentence in a post-conviction proceeding. (Id. at 13-14). Petitioner testified that he had not been threatened to plead guilty, that no outside promises of a light sentence been made to him, and that he was satisfied with his attorney. (Id. at 15). Based on these representations, the magistrate judge accepted Petitioner's plea, finding that it was knowingly and voluntarily made. (Id. at 17-18).

A probation officer prepared a presentence report, finding that, based on a total offense level of 33 and a criminal history category of IV, Petitioner's guideline range was 188-235 months imprisonment. (Id., Doc. No. 56 at ¶ 69). At sentencing, Petitioner testified that he had read the PSR and reviewed it with his attorney. (Id., Doc. No. 83 at 6-7: Sent. Tr.). On October 22, 2015, this Court sentenced Petitioner to 103 months of imprisonment, after granting a motion for downward departure by the Government pursuant to U.S.S.G. § 5K1.1 based on substantial assistance. (Id., Doc. No. 83 at 21). Petitioner appealed and his appeal was dismissed by the Fourth Circuit on June 16, 2016. (Id., Doc. Nos. 91, 92). On October 17, 2016, the Supreme Court denied the petition for writ of certiorari. (Id., Doc. No. 94).

Petitioner filed the present motion to vacate on February 28, 2017, raising the following claims: (1) Petitioner received ineffective assistance of counsel; (2) this Court erred in determining Petitioner's criminal history category; (3) this Court erred in failing to grant a downward departure under U.S.S.G. § 5K2.16, as Petitioner alleges he was the originator in identifying and disclosing his criminal conduct to the Government; and (4) Petitioner was improperly denied credit for the time he was incarcerated in Costa Rica while awaiting extradition to the United States. (Id.). The Government filed its response on May 30, 2017.

(Doc. No. 4). Petitioner filed a pro se reply on June 16, 2017. (Doc. No. 6). Therefore, this matter is ripe for disposition.

## II.    STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III.   DISCUSSION

### A. Plea Waiver of Petitioner's Claims Not Raising Ineffective Assistance of Counsel.

In its response, the Government first contends that Petitioner waived challenges to his criminal history calculation and the Court's failure to grant him a downward departure under U.S.S.G. § 5K2.16. For the following reasons, the Court agrees. A defendant's knowing and voluntary waiver of the right to collaterally attack his conviction and sentence is enforceable. United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005). In evaluating claims under § 2255, statements made by a defendant under oath at a plea hearing carry a "strong presumption of verity" and present a "formidable barrier" to subsequent collateral attacks. Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). As the Fourth Circuit has made clear, "courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy," and § 2255 claims that contradict a petitioner's plea colloquy are deemed "patently frivolous or false," except in extraordinary circumstances. Lemaster, 403 F.3d at 221-22.

4

Here, as the Court has already noted, Petitioner testified under oath that he understood the terms of his plea agreement, including the waiver of his post-conviction rights, and that his guilty plea was made knowingly and voluntarily. He also testified that he understood that his sentence had not yet been determined and that he could not withdraw his plea if his sentence was higher than he expected. Accordingly, his post-conviction waiver is valid, see Lemaster, 403 F.3d at 221-22. Because Petitioner knowingly and voluntarily waived the right to contest his conviction or sentence on post-conviction review, his challenges to his criminal history calculation and the failure to receive a downward departure under U.S.S.G. § 5K2.16 are barred by the waiver and are therefore dismissed for this reason. See Lemaster, 403 F.3d at 220.

**B. Merits of Petitioner's Claims.**

In its response, the Government also contends that, regardless of any waiver, Petitioner's claims also fail on the merits. For the following reasons, the Court agrees.

**1. Petitioner's Claim that He Is Entitled to A Downward Departure under U.S.S.G. Policy Statement § 5K2.16.**

First, Petitioner asserts that he self-reported his participation in sweepstakes fraud to United States personnel located in the Costa Rican embassy on November 9, 2012, and he alleges that this was the first time the Government learned of his criminal activities. Accordingly, Petitioner submits that he is entitled to a discretionary, 85-month downward departure under U.S.S.G. Policy Statement § 5K2.16, "Voluntary Disclosure of Offense."

Petitioner's contention fails, as his timing as to how and when the Government learned of his criminal conduct is erroneous. The Government states that it was aware of Petitioner's participation in the sweepstakes fraud no later than March 2012 through the debriefing of a cooperating defendant ("CD"), who was also Petitioner's co-conspirator. The CD identified

5

Petitioner and his wife by name and admitted to participating in sweepstakes fraud with them as early as 2007. The CD went onto describe other call centers where he conducted the sweepstakes fraud with Petitioner and his wife, including call centers owned by Petitioner. The Government therefore asserts that it was aware of Petitioner's criminal activities and an investigation was already underway before November 9, 2012, when Petitioner first disclosed his criminal activities to Government officials. Moreover, the Government states that, during this disclosure, Petitioner materially misrepresented his level of participation in the fraudulent scheme as well as the amount of criminal proceeds he received. Petitioner has presented nothing to rebut the Government's assertions regarding when and how it first learned about Petitioner's criminal activities, nor has he shown any error by the Court in failing to give Petitioner a downward departure under U.S.S.G. Policy Statement § 5K2.16. Thus, even if this claim were not waived, it would fail on the merits.

**2. Petitioner's Challenge to His Criminal History Score.**

As noted, Petitioner waived the right to appeal all sentencing issues; therefore, he is barred from challenging his criminal history computation. In any event, Petitioner's claim regarding his criminal history computation fails. U.S.S.G. § 4A1.1(a) states that three points are added to the criminal history score for each prior sentence of imprisonment exceeding one year and one month. Application note § 4A1.1(a) indicates that a sentence more than fifteen years before the defendant's commencement of the instant offense is not counted unless the defendant's incarceration extended into this fifteen-year period. Application note § 4A1.2 "Definitions" indicates that "[p]rior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest."

To prove that each offense was committed on a different occasion, the government must show that each offense arose out of a "separate and distinct criminal episode." United States v. Boykin, 669 F.3d 467, 470 (4th Cir. 2012) (quoting United States v. Carr, 592 F.3d 636, 640 (4th Cir. 2010)). That is, each predicate offense must have "a beginning and an end," such that they each "constitute an occurrence unto themselves." Carr, 592 F.3d at 640 (quoting United States v. Letterlough, 63 F.3d 332, 335 (4th Cir. 1995)).

Petitioner's presentence report indicates he was charged separately and prosecuted for three independent burglaries by the state of Texas on 4/23/1992, 11/10/1992, and 4/22/1993, and he received an eight-year sentence of incarceration. (Crim. Case No. 3:12-cr-370-RJC-DSC-2, Doc. No. 56 at ¶¶ 46, 47). Petitioner was released from Texas state parole status on April 22, 2001. (Id. at ¶ 47). The grand jury returned an indictment on November 15, 2012, which charged that Petitioner's criminal conduct commenced no later than 2007 and continued through at least September 2012. (Id., Doc. No. 7 at ¶ 3). Finally, Petitioner had an outstanding Texas state felony drug charge based on an October 10, 2001, arrest which prompted his flight from the United States as a fugitive in May 2002 to avoid prosecution. (Civ. Doc. No. 4-1 at 1: Ex. A). At sentencing, this Court addressed whether the prior offenses were to be consolidated or to be counted as separate offenses for purposes of calculating a criminal history score and determined the crimes were separate offenses and should be counted separately, yielding a criminal history score of nine. (Crim. Case No. 3:12-cr-370-RJC-DSC-2, Doc. No. 83 at 7). As determined from reviewing the PSR and Indictment, Petitioner's release from parole was six years earlier than the criminal conduct charged in the indictment; the indictment was returned within fourteen years of Petitioner's release from parole; and Petitioner was a fugitive and outside the United States from 2002 until his arrest on February 25, 2014. Therefore, under any method of calculation, the

earlier offenses were properly included in Petitioner's criminal history computation. The unambiguous separate nature of Petitioner's offenses, occurring on different dates and locations, and the charged criminal conduct transpiring within fifteen years of the Petitioner's parole termination date, demonstrate that the factual record supports the Court's rulings.

Finally, barring a miscarriage of justice, error in the application of the Sentencing Guidelines cannot be raised in a § 2255 proceeding. United States v. Foote, 784 F.3d 931, 936 (4th Cir. 2015). Petitioner has simply not alleged and cannot show any miscarriage of justice. Therefore, this claim is not cognizable under § 2255, and, even if it were cognizable, it would fail on the merits. See Foote, 784 F.3d at 936.

**3. Petitioner's Claims of Ineffective Assistance of Counsel.**

Petitioner next brings various claims of ineffective assistance of counsel, including the following: (1) counsel pressured Petitioner to enter into the plea agreement; (2) counsel did not provide Petitioner with the time needed to read and consider the plea agreement; (3) counsel did not provide Petitioner access to available discovery; (4) counsel did not provide Petitioner with the "Factual Basis" to read before his plea hearing; and (5) counsel failed to explain the terms of the plea agreement to Petitioner's satisfaction.

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI. To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir.

2010). Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

To establish prejudice in the context of a guilty plea, a petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). In evaluating such a claim, statements made by a defendant under oath at the plea hearing carry a "strong presumption of verity" and present a "formidable barrier" to subsequent collateral attacks. Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). Indeed, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should dismiss . . . any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." United States v. Lemaster, 403 F.3d 216, 221-22 (4th Cir. 2005).

Petitioner has failed to demonstrate that he received ineffective assistance of counsel.[1] First, counsel's advice to Petitioner that, in his professional opinion, the best outcome for him

---

[1] Petitioner first raised a claim for ineffective assistance of counsel at a hearing before Magistrate Judge Cayer on July 7, 2015, when Petitioner's first attorney, William R. Terpening, moved to withdraw. Terpening was allowed to withdraw and Daniel B. McIntyre, III, was appointed as new counsel. Notably, Judge Cayer failed to find any deficiency in Terpening's representation. At sentencing, this Court again addressed the professional services of defense

9

would be achieved through a guilty plea was validated through the actions of Petitioner in his continued desire to plead guilty even after having consulted with new counsel. (Crim. Case No. 3:12-cr-370-RJC-DSC-2, Doc. No. 83 at 6; see also Civ. Doc. No. 1 at 13). As to Petitioner's contention that counsel somehow coerced Petitioner into pleading guilty, Petitioner has admitted on three occasions that it was his choice to plead guilty—first at his plea hearing, (Crim. Case No. 3:12-cr-370-RJC-DSC-2, Doc. No. 52 at 3); again at his sentencing hearing, (id., Doc. No. 84 at 6); and finally in the pending motion to vacate, (Civ. Doc. No. 1 at 13). Next, Plaintiff fails to show ineffective assistance of counsel based on original counsel's alleged failure to provide certain requested discovery documents to Petitioner. The limitations in counsel's ability to share discovery with the defendant arose from security limitations imposed by Petitioner's confinement at the Mecklenburg County jail, rather than from counsel's choice.

Finally, several of the Petitioner's claims are simply belied by the record, including claims that he never reviewed his Plea Agreement or Factual Basis, even though acknowledging doing so while under oath during his plea hearing before Judge Keesler. (Crim. Case No. 3:12-cr-370-RJC-DSC-2, Doc. No. 58 at 13, 15). Petitioner also alleges that he was unaware of the terms of his waiver of appellate rights which he, again while under oath, affirmatively admitted having understood to Judge Keesler during his plea colloquy. (Id., Doc. No. 58 at 14). When directly questioned by Judge Keesler during the plea hearing about the services of his attorney, Petitioner responded that he was satisfied. (Id. at 16). Finally, during the plea hearing, defense counsel represented that he had gone over the plea agreement and factual basis with the Petitioner and Petitioner understood and knew what he is doing. (Id. at 17).

---

counsel, and Petitioner indicated that he was satisfied with the services of counsel, understood the terms of his plea agreement, and wanted to confirm his intention to plead guilty. (Crim. Case No. 3:12-cr-370-RJC-DSC-2, Doc. No. 83 at 6).

In sum, Petitioner fails to demonstrate with sufficient evidence how his counsel's actions were in any way deficient, let alone to the extent to create an error "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Strickland</u>, 466 U.S. at 687. Moreover, even assuming that the Petitioner's counsel was deficient, Petitioner's ineffective assistance of counsel claim fails because Petitioner has failed to show how he was prejudiced by his counsel's performance. While Petitioner asserts that he was extremely prejudiced by his counsel's unprofessional errors, Petitioner fails to enumerate, with specific evidence, those unprofessional errors. Using vague language, Petitioner appears to claim that his counsel committed an error by not communicating with Petitioner, even though such allegations were denied under oath by Petitioner at his plea hearing. To satisfy the prejudice part of the <u>Strickland</u> test as it applies to guilty pleas, Petitioner must prove that, but for counsel's error, there is a reasonable probability that he would have insisted on proceeding to trial instead of pleading guilty. See <u>Hill v. Lockhart</u>, 474 U.S. 52, 58. Counsel's alleged lack of communication did not influence Petitioner's decision-making process regarding whether he should or should not accept his guilty plea, since he affirmed his decision on two subsequent occasions. Petitioner therefore fails to show that, but for the counsel's alleged errors, there was a reasonable probability that Petitioner would have insisted on proceeding to trial instead of pleading guilty.

For the reasons stated herein, Petitioner's ineffective assistance of counsel claim fails.

**4. Petitioner's Contention that He is Entitled to Credit for 117 Days of Incarceration in Costa Rica While He Was Awaiting Extradition to the United States.**

Finally, Petitioner alleges that he was inappropriately denied credit for 117 days of incarceration in Costa Rica while he was awaiting extradition. Petitioner asserts that he

attempted to resolve this issue administratively with the Bureau of Prisons, exhausted his appeals, and was denied credit. A prisoner's claim that the Bureau of Prisons has improperly calculated credit for time served is properly brought in the district of confinement, pursuant to 28 U.S.C. § 2241, after the prisoner has exhausted his administrative remedies with the Bureau of Prisons. See Bradley v. Fed. Bureau of Prisons, Civ. No. 1:09cv437, 2009 WL 4824993, at *1 (W.D.N.C. Dec. 11, 2009). This claim is, therefore, dismissed without prejudice to Petitioner to file a Section 2241 petition in his current district of confinement, Elkton Federal Correctional Institution in Lisbon, Ohio.

### IV. CONCLUSION

For the foregoing reasons, the Court denies and dismisses Petitioner's § 2255 petition. As to Petitioner's request to be given credit for 117 days of incarceration while he was detained in Costa Rica before being extradited, Petitioner may file a Section 2441 petition in his district of confinement.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), is **DENIED** and **DISMISSED**. Petitioner's claim regarding BOP credits for time served is dismissed without prejudice.

2. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473,

484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: September 8, 2017

Robert J. Conrad, Jr.
United States District Judge